UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAIMING ZHANG,<br><br>    Plaintiff,<br><br>    v.<br><br>TWITTER INC.,<br><br>    Defendant. | Case No. 23-cv-00980-JSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. Nos. 36, 38 |

Plaintiff brings claims against Twitter, Inc., following the permanent suspension of his Twitter account in 2021. Plaintiff's motion for a temporary restraining order (TRO) is now pending before the Court. (Dkt. No. 36.) Plaintiff seeks an order requiring Twitter to reinstate his account and permanently suspend the account registered to another Twitter user. Having considered the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and DENIES the TRO. Plaintiff has not shown a likelihood of success on the merits or irreparable harm given his delay in seeking relief.

## BACKGROUND

Plaintiff alleges that his account was suspended in November 2021 for "violating twitter rules." (Dkt. No. 34 at 17.) According to the Amended Complaint, "the only thing [Plaintiff] ever did with the account during that period was direct messaging people inciting for them to expose [another Twitter user's] HIV status so that he does not spread the infectious disease on a daily basis." (*Id*. at 17.) Plaintiff alleges this other Twitter user, @troyejacobsxxx, uses his account to promote a paid gay porn subscription account. (*Id*. at 13-15.) Based on a 2021 tweet by @troyejacobsxxx stating that he "has a disease 'other gays have'" Plaintiff believes this Twitter user has HIV. (*Id*. at 14.) Plaintiff alleges he requested @troyejacobsxxx provide him with a

1  blood test, but he declined. (*Id.* at 14-15.) Plaintiff then began contacting other "gay porn stars [on
2  Twitter] asking them to expose his HIV status to protect people in the industry." (*Id*. at 16.)
3  Twitter suspended Plaintiff's account shortly thereafter. (*Id*. at 17.)  Plaintiff filed numerous
4  appeals of his suspension with Twitter. (*Id*. at 19.)  Plaintiff also alleges he reported
5  @troyejacobsxxx for posting "cruising videos" depicting "public sex with college students on
6  campuses, failing to verify their age, who may very well be under 18." (*Id*. at 19.)
7      Plaintiff filed this action on March 2, 2023 alleging numerous claims and seeking $11
8  million in damages. (Dkt. No. 1.)  After Twitter moved to dismiss, Plaintiff filed a 115-page
9  Amended Complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B). (Dkt. No. 34.)
10 Plaintiff filed the underlying TRO the same day. (Dkt. No. 36.)  The Court issued an order setting
11 a deadline for Twitter to respond to the TRO and Plaintiff filed an "emergency ex parte
12 application" seeking to have the motion heard more quickly. (Dkt. Nos. 37, 38.)  Twitter filed its
13 opposition to the TRO and a motion to dismiss the Amended Complaint on May 25, 2023. (Dkt.
14 Nos. 40, 41.)

**DISCUSSION**

A TRO is an "extraordinary remedy" that should only be awarded upon a clear showing that the plaintiff is entitled to such relief. *See Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). The standard for issuing a TRO is identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A court considers four factors before granting preliminary relief: (1) whether the applicant is likely to succeed on the merits of the action; (2) whether the applicant is likely to suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of the equities tip in the applicant's favor; and (4) that an injunction is in the public interest. *Doe v. Reed*, 586 F.3d 671, 676 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).  Plaintiff has not demonstrated that extraordinary relief is warranted here.

**A. Likelihood of Success on the Merits**

To satisfy the first factor, the movant must make "a strong showing that he is likely to succeed on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (cleaned up).

1  This means he "must show, at a minimum, that []he has a substantial case for relief on the merits."
2  *Id*. at 968.

3  Twitter insists Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("CDA") bars Plaintiff's claims as they are predicated on Twitter's suspension of his account, failure to suspend the third-party user's account, and failure to take action regarding the content posted on the third-party Twitter user's account. Section 230 of the CDA "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC ("Roommates")*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). Under Section 230(c)(1), "providers or users of an interactive computer service shall not be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230(c)(1) immunity extends to service providers' activities where they moderate third-party content, such as "reviewing, editing, and deciding whether to publish or to withdraw from publications third party content." *Barnes v. Yahoo*, 570 F.3d 1096, 1102 (9th Cir. 2009). Thus, "the CDA protects from liability (1) a provider of an interactive computer service (2) whom a plaintiff seeks to treat as a publisher or speaker (3) of information provided by another information content provider." *Brittain v. Twitter, Inc*., No. 19-CV-00114-YGR, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019) (citing *Barnes v. Yahoo!, Inc*., 570 F.3d 1096, 1100 (9th Cir. 2009), as amended (Sept. 28, 2009)).

Each of these requirements is met here. As numerous courts have held, Twitter is a provider of an interactive computer service. *See Rangel v. Dorsey*, No. 21-CV-08062-CRB, 2022 WL 2820107, at *3 (N.D. Cal. July 19, 2022) (collecting cases). While it is difficult to discern Plaintiff's precise legal claims from his 125-page complaint, he appears to allege defamation, fraud, emotional distress, and contract-based claims following the suspension of his account and the alleged failure to suspend the third-party user's account. Plaintiff's claims thus seek to treat Twitter as a publisher. *Roommates.Com*, 521 F.3d at 1170–71 ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). Finally, Plaintiff seeks to hold Twitter liable for decisions regarding

3

"information provided by another information content provider"—that is, information that he and the third-party user, rather than Twitter, provided. As such, it is likely Twitter is immune under Section 230(c)(1) from Plaintiff's claims arising from Twitter's decisions regarding suspension of his account and its decisions regarding the third-party user's account.

To the extent Plaintiff also alleges claims under 18 U.S.C. §§ 2252, 2252A, 2257 related to Twitter's alleged failure to investigate the third-party Twitter user for possible child sex exploitation, criminal statutes generally do not give rise to a private right of action. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994). Likewise, although Section 230(e)(1) provides a carve-out from its protections for federal criminal prosecutions, 47 U.S.C. § 230(e)(1), it does not provide any exception from Section 230 immunity for civil claims premised upon federal criminal statutes—including Plaintiff's Sections 2252, 2252A, 2257 claims. *See Gonzalez v. Google LLC*, 2 F.4th 871, 890 (9th Cir. 2021) rev'd on other grounds by *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1209 (2023).

Accordingly, Plaintiff has failed to demonstrate a likelihood of success on the merits of his legal claims.

### B. Likelihood of Irreparable Injury

Plaintiff has also failed to demonstrate that "irreparable harm is likely to result in the absence of the injunction*." All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Plaintiff contends "the irreparable harm consists of: a) my emotional distress, b) the irreparable harm of child porn to the children causing suicide et cetera, c) the harm of more emotional distress if he scams more people, d) the irreparable harm of defamation." (Dkt. No. 36-2 at 1.)

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014); *see also Goldie's Bookstore v. Superior Ct. of the State of Cal*., 739 F.2d 466, 471 (9th Cir. 1984) ("financial injury does not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation."). Here, Plaintiff seeks "millions of dollars" in damages for his current and future emotional distress. (Dkt. No. 34 at 54.) Any allegation that

4

damages are not an adequate remedy is undercut by Plaintiff's delay in seeking relief. Although Twitter suspended his account in 2021, Plaintiff did not file this action until March 2023 and did not seek a TRO until two months later. "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co*., 762 F.2d 1374, 1377 (9th Cir. 1985); *see also Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (noting that "delay is only one factor among the many that we consider in evaluating whether a plaintiff is likely to suffer irreparable harm").

***

Having concluded that the first two factors do not support Plaintiff's motion for a TRO, the Court need not address the other factors. *See Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009). Plaintiff has not demonstrated that the "extraordinary remedy" of a TRO is warranted here. *Winter*, 555 U.S. at 24.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for a TRO is DENIED.

The previously established briefing schedule on Defendant's motion to dismiss remains in effect. (Dkt. No. 45.)

This Order disposes of Docket Nos. 36, 38.

**IT IS SO ORDERED.**

Dated: June 8, 2023

JACQUELINE SCOTT CORLEY
United States District Judge

5