UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAIMING ZHANG,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>TWITTER INC.,<br><br>　　　　Defendant. | Case No. 23-cv-00980-JSC<br><br>**ORDER RE: MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 40 |

Plaintiff, Taiming Zhang, who is representing himself, brings claims against Twitter, Inc.[1], following the permanent suspension of his Twitter account in 2021. Twitter's motion to dismiss Plaintiff's Amended Complaint is pending before the Court. (Dkt. No. 40.[2]) Having considered the parties' briefs and the relevant legal authority, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the August 24, 2023 hearing, and GRANTS the motion to dismiss. The Communications Decency Act, 47 U.S.C. § 230 ("CDA"), bars Plaintiff's claims and, in any event, he fails to state a plausible claim.

**BACKGROUND**

**A. Amended Complaint Allegations**

Twitter suspended Plaintiff's account in November 2021 for "violating twitter rules," but "the only thing [Plaintiff] ever did with the account during that period was direct messaging people inciting for them to expose [another Twitter user's] HIV status so that he does not spread the infectious disease on a daily basis." (Dkt. No. 34 at 17.) According to Plaintiff, this other

---

[1] Although Twitter has been rebranded "X Corp.," the parties continue to refer to Defendant as Twitter in their briefs and the Court does so here as well for ease of reference.
[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

1    Twitter user, @troyejacobsxxx, uses his account to promote a paid gay porn subscription account
2    on OnlyFans.com. (*Id*. at 13-15.) Based on a 2021 tweet by @troyejacobsxxx stating he "has a
3    disease 'other gays have'" Plaintiff believes this Twitter user has HIV. (*Id*. at 14.) Plaintiff
4    requested @troyejacobsxxx provide him with a blood test, but he declined. (*Id*. at 14-15.) Plaintiff
5    then began contacting other "gay porn stars [on Twitter] asking them to expose his HIV status to
6    protect people in the industry." (*Id*. at 16.) Twitter suspended Plaintiff's account shortly
7    thereafter. (*Id*. at 17.)

8    Plaintiff filed numerous appeals of his suspension with Twitter, but received no response.
9    (*Id*. at 19.) Plaintiff also reported @troyejacobsxxx for posting "cruising videos" depicting
10   "public sex with college students on campuses, failing to verify their age, who may very well be
11   under 18," but Twitter did not remove the content or suspend @troyejacobsxxx's account. (*Id*. at
12   19.) Finally, Plaintiff reported @troyejacobsxxx for violating Twitter's financial scam policy after
13   he was "lured" to @troyejacobsxxx's OnlyFans.com site and "scammed [of his] money." (*Id*. at
14   20-22.)

15   **B. Procedural Background**

16   Plaintiff filed this action on March 2, 2023 alleging numerous claims and seeking $11
17   million in damages. (Dkt. No. 1.) After Twitter moved to dismiss, Plaintiff filed a 115-page
18   Amended Complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B). (Dkt. No. 34.)
19   While it is difficult to discern Plaintiff's precise legal claims, he appears to allege claims for
20   breach of contract, fraud, violation of California's Unfair Competition Law (the "UCL"), and tort
21   claims including intentional infliction of emotional distress (IIED) and assault based on the risk of
22   contracting HIV, and defamation, as well as claims based on violation of criminal statutes, 18
23   U.S.C. §§ 2252, 2252A, 2257. (*Id*. at 4, 58.)

24   Plaintiff's Amended Complaint was accompanied by a motion for a temporary restraining
25   order seeking an order requiring Twitter to reinstate his account and permanently suspend
26   @troyejacobsxxx's account. (Dkt. No. 36.) The Court denied the TRO because Plaintiff had not
27   demonstrated a likelihood of success on the merits or irreparable harm. (Dkt. No. 46.) Twitter
28   thereafter moved to dismiss the Amended Complaint and the parties stipulated to an extended

briefing schedule. (Dkt. Nos. 40, 44.) The motion is now fully briefed and set for hearing on August 24, 2023.

### C. Judicial Notice and Incorporation by Reference

When ruling on a Rule 12(b)(6) motion, district courts may consider documents attached to the complaint, documents incorporated by reference into the complaint, and matters of judicial notice without converting a motion to dismiss into one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Documents not attached to a complaint whose contents are alleged and whose authenticity no party questions may be incorporated by reference into a complaint if the plaintiff's pleading refers extensively to the document or the document forms the basis of the plaintiff's claims. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *Ritchie*, 342 F.3d at 908. The Court may take judicial notice of matters either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Twitter requests the Court consider eight documents under either the judicial notice or incorporation by reference doctrines. (Dkt. No. 42.) These include: (1) Twitter's signup page for new account holders as it existed when Plaintiff allegedly created his Twitter account (Exhibit A); (2) Twitter's Terms of Service as they existed when Plaintiff allegedly created his Twitter account, available at https://web.archive.org/web/20130303002826/twitter.com/tos (Exhibit B); (3) Twitter's Terms of Service in effect when Plaintiff's account was allegedly suspended in November 2021 and when Plaintiff allegedly reported the third-party account holder for violating Twitter's policies in April 2022, available at https://web.archive.org/web/20211101094841/https://twitter.com/en/tos (Exhibit C); (4) Twitter's "Abusive behavior policy," in effect when Plaintiff's account was allegedly suspended in November 2021, available at https://web.archive.org/web/20211103202418/https://help.twitter.com/en/rules-andpolicies/abusive-behavior (Exhibit D); (5) Twitter's "Platform manipulation and spam policy" which was in effect in was in effect when Plaintiff's account was allegedly suspended in

3

1   November 2021, available at

2   https://web.archive.org/web/20211101232239/https://help.twitter.com/en/rules-

3   andpolicies/platform-manipulation (Exhibit E); (6) Twitter's "Financial scam policy," which was

4   in effect when Plaintiff's account was allegedly suspended in November 2021, available at

5   https://web.archive.org/web/20211023003617/https://help.twitter.com/en/rules-andpoli

6   cies/financial-scam (Exhibit F); (7) Twitter's "Child sexual exploitation policy," which was in

7   effect when Plaintiff's account was allegedly suspended in November 2021, available at

8   https://web.archive.org/web/20211110040919/https://help.twitter.com/en/rules-andpolicies/sexual-

9   exploitation-policy (Exhibit G); and (8) a copy of the complaint filed in the San Francisco County

10  Superior Court Case Number CGC-22-602784 (Exhibit H).

11        Exhibits A though G are properly subject to judicial notice because they are publicly

12  available webpages and their contents are not subject to reasonable dispute. *See Threshold Enters.*

13  *Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("In general, websites and

14  their contents may be judicially noticed" and collecting cases re: the same). Plaintiff's contention

15  "counsel has a propensity of lying" and there is no proof these documents represent what is on the

16  web archive is not well-taken. (Dkt. No. 53 at 24-25.) Plaintiff does not dispute the content of

17  these documents, but instead impugns counsel's credibility. Courts routinely take judicial notice

18  of terms of service. *See, e.g.*, *Yuksel v. Twitter, Inc.*, No. 22-CV-05415-TSH, 2022 WL 16748612,

19  at *2 (N.D. Cal. Nov. 7, 2022) (taking judicial notice of Twitter's Terms of Service); *Trudeau v.*

20  *Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (taking judicial notice of Google's Terms

21  of Service); *Matera v. Google Inc.*, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) (same).

22  Likewise, "district courts in this circuit have routinely taken judicial notice of content from the

23  Internet Archive's Wayback Machine pursuant to [Rule 201]." *In re Facebook, Inc. Sec. Litig.*,

24  405 F. Supp. 3d 809, 829 (N.D. Cal. 2019); *see also Parziale v. HP, Inc.*, 2020 WL 5798274, at *3

25  (N.D. Cal. Sept. 29, 2020) (same) (collecting cases); *Brown v. Google LLC*, 2021 WL 949372, at

26  *5 (N.D. Cal. Mar. 12, 2021) ("Courts have taken judicial notice of the contents of web pages

27  available through the Wayback Machine as facts that can be accurately and readily determined

28  from sources whose accuracy cannot reasonably be questioned.").

1    Plaintiff's Amended Complaint alleges breach of contract and fraud claims predicated on
2 Twitter's suspension of his account in violation of its Terms of Service, and refusal to take any
3 action regarding the third-party user's account in violation of its Platform Manipulation and Spam
4 policy, Abusive Behavior policy, Financial Scam policy, and Child Sexual Exploitation policy.
5 (*See, e.g.*, Dkt. No. 34 at 4-6, 8-10, 28, 61.)  Exhibits B-G are thus also properly subject to
6 incorporation by reference.

**DISCUSSION**

8    Twitter raises three arguments in favor of dismissal: (1) Plaintiff's claims are barred by
9 Section 230 of the Communications Decency Act, 47 U.S.C. § 230; (2) Plaintiff's claims are
10 barred by the First Amendment; and (3) Plaintiff fails to state a plausible claim for relief.

**A. Section 230 of the Communications Decency Act**

12    Twitter insists Section 230 of the Communications Decency Act, 47 U.S.C. § 230
13 ("CDA"), bars Plaintiff's claims because they are predicated on Twitter's suspension of his
14 account, failure to suspend the third-party user's account, and failure to take action regarding the
15 content posted on the third-party Twitter user's account.  Section 230 of the CDA "immunizes
16 providers of interactive computer services against liability arising from content created by third
17 parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC ("Roommates")*,
18 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). Under Section 230(c)(1), "providers or users of an
19 interactive computer service shall not be treated as the publisher or speaker of any information
20 provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230(c)(1)
21 immunity extends to service providers' activities where they moderating third-party content, such
22 as "reviewing, editing, and deciding whether to publish or to withdraw from publication third
23 party content." *Barnes v. Yahoo*, 570 F.3d 1096, 1102 (9th Cir. 2009).  Thus, "the CDA protects
24 from liability (1) a provider of an interactive computer service (2) whom a plaintiff seeks to treat
25 as a publisher or speaker (3) of information provided by another information content provider."
26 *Brittain v. Twitter, Inc.*, No. 19-CV-00114-YGR, 2019 WL 2423375, at *2 (N.D. Cal. June 10,
27 2019) (citing *Barnes*, 570 F.3d at 1100).
28    Each of these requirements is met here.  First, Twitter is a "provider ... of an interactive

computer service" under the CDA. *See* 47 U.S.C. § 230(f)(2); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (finding the "prototypical" example is an "online messaging board"); *see also Yuksel v. Twitter, Inc.*, No. 22-CV-05415-TSH, 2022 WL 16748612, at *3 (N.D. Cal. Nov. 7, 2022) (collecting cases).

Second, Plaintiff seeks to hold Twitter liable for decisions regarding "information provided by another information content provider"—that is, information he and the third-party user, rather than Twitter, provided. Plaintiff's argument Twitter is itself "an information content provider" of the third-party account holder's content within the meaning of Section 230(f)(3) is misplaced. (Dkt. No. 53 at 21-22.) Section 230(f)(3) defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." Plaintiff appears to argue Twitter's placement of information in "social media feeds" renders it an information content provider. Not so. "[P]roliferation and dissemination of content does not equal creation or development of content." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1271 (9th Cir. 2016); *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (finding Section 230 immunity applies where the interactive computer service provider "is not responsible, in whole or in part, for the development of th[e] content, which comes entirely from subscribers and is passively displayed by [the interactive computer service provider].").

Third and finally, while it is difficult to discern Plaintiff's precise legal claims from his 115-page amended complaint, all his claims relate to the suspension of his account and the alleged failure to suspend the third-party user's account, whether they are styled as breach of contract, tort, or fraud claims. "[W]hat matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d 1096, 1101-02. All of Plaintiff's claims seek to treat Twitter as a publisher. *Roommates.Com*, 521 F.3d at 1170–71 ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.").

6

Plaintiff's argument "CDA 230 carries no relevance" because Twitter breached their contract is unavailing. There is no exception under Section 230 for breach of contract claims. *See* 47 U.S.C. § 230(e). Courts routinely hold Section 230 immunizes platforms from contract claims, where, as here, they seek to impose liability for protected publishing activity. *See, e.g.*, *King v. Facebook, Inc.*, 845 F. App'x 691, 692 (9th Cir. 2021) (affirming dismissal of pro se plaintiff's contract claim based on, among other things, Facebook's suspension of her user account, because "'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230'") (quoting *Roommates*, 521 F.3d at 1170-71); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 28 (2021) ("many [courts] have concluded that [contract] claims were barred [by Section 230] because the plaintiff's cause of action sought to treat the defendant as a publisher or speaker of user generated content") (collecting cases).

To the extent Plaintiff alleges claims under 18 U.S.C. §§ 2252, 2252A, 2257 related to Twitter's alleged failure to investigate the third-party Twitter user for possible child sex exploitation, such claims are still barred by Section 230. Although Section 230(e)(1) provides a carve-out from its protections for federal criminal prosecutions, 47 U.S.C. § 230(e)(1), it does not provide any exception from Section 230 immunity for *civil* claims premised upon federal criminal statutes—including Plaintiff's Sections 2252, 2252A, 2257 claims. *See Gonzalez v. Google LLC*, 2 F.4th 871, 890 (9th Cir. 2021), rev'd on other grounds by *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1209 (2023).

*\*\*\**

Accordingly, Twitter is immune under Section 230(c)(1) from Plaintiff's claims arising from Twitter's decisions regarding suspension of his account and its decisions regarding the third-party user's account.[3]

### B. Failure to State a Claim

Even if Section 230 did not bar Plaintiff's claims, his complaint fails to state a plausible claim.

---

[3] The Court declines to consider Twitter's First Amendment immunity argument as Plaintiff's claims fails for multiple other reasons as set forth in this Order.

7

**1) Breach of Contract**

Plaintiff's breach of contract claim appears predicated on four theories: (1) Twitter's failure to suspend the third-party account holder despite his alleged breach of Twitter's Financial Scam and Platform Manipulation and Spam policies; (2) Twitter's breach of its Terms of Service by suspending his account and denying his appeals seeking reinstatement of his account; (3) Twitter's breach of its Child Exploitation Policy; and (4) Twitter's breach of its Abusive Behavior Policy by aiding HIV spread.  None of these theories state a viable breach of contract claim.

To state a claim for breach of contract under California law, Plaintiff must plead facts establishing the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008).

To the extent Plaintiff's breach of contract claim is predicated on Twitter's suspension of and refusal to reinstate his account, this claim fails because Twitter's Terms of Service provide "[w]e may suspend or terminate your accounts or cease providing you with all or part of the Services at any time for any reason."  (Dkt. No. 42-2 (Ex. B) at 5; Dkt. No. 42-3 (Ex. C) at 9.) That is, under the express terms of the Terms of Service, Twitter had the contractual right to terminate Plaintiff's account for any reason.  *See Yuksel*, 2022 WL 16748612, at *5 ("Twitter had the contractual right under the Terms to suspend Yuksel's account, and his breach of contract claim therefore fails."); *Murphy*, 60 Cal. App. 5th at 35 (holding breach of contract claim "necessarily fails ... because Twitter's terms of service expressly state that they reserve the right to 'suspend or terminate [users'] accounts ... for any or no reason' without liability").

As to Twitter's alleged breach of its various policies, Plaintiff has not alleged facts that plausibly support an inference these policies constitute a contract between Plaintiff and Twitter, and even if he could do so, the policies do not require Twitter to perform any particular action; that is, there is again no breach of a contract.  For example, Twitter's Financial Scam, Abusive Behavior, and Platform Manipulation and Spam policies do not require Twitter to suspend users suspected of violating the terms of the policies.  The Platform Manipulation and Spam Policy provides "[t]he consequences for violating this policy depend on the severity of the violation as

1  well as any previous history of violations" and lists various actions Twitter "may take." (Dkt. No.
2  42-5 (Ex. E) at 9.)  The Financial Scam Policy and Abusive Behavior Policy includes the same
3  and/or similar language.  (Dkt. No. 42-6 (Ex. F) at 5 (same language); Dkt. No. 42-4 (Ex. D) at 6
4  ("When determining the penalty for violating this policy, we consider a number of factors
5  including, but not limited to, the severity of the violation and an individual's previous record of
6  rule violations and listing "potential enforcement options").)  Plaintiff also has not plausibly
7  alleged a breach of Twitter's Child Sexual Exploitation Policy with his allegation he reported the
8  third-party user's posting of "'cruising videos' where he had public sex with college students on
9  campuses, failing to verify their age, who may very well be under 18." (Dkt. No. 34 at 19.)  The
10 Child Sexual Exploitation Policy does not require Twitter to suspend users *accused* of violating
11 the policy.  (Dkt. No. 42-7 at 5-6.)  Thus, Plaintiff "has not pointed to any contractual provisions"
12 which "imposed a duty on Twitter to suspend offending accounts." *Morton v. Twitter, Inc.*, No.
13 CV 20-10434-GW-JEMX, 2021 WL 1181753, at *5 (C.D. Cal. Feb. 19, 2021).

Finally, while Plaintiff seeks millions of dollars in damages, he does not allege any actual damages based on Twitter's alleged contractual breaches.

Accordingly, Plaintiff's breach of contract claim fails to state "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and does not "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2) Fraud

Plaintiff alleges Twitter's "financial scam policy and the scam portion of the platform manipulation and spam policy are FRAUDULENT, where they NEVER intend to enforce them." (Dkt. No. 34 at 11-12.)  He appears to allege that because Twitter did not suspend the third-party account holder for violation of these policies, Twitter never enforces the policies.  These allegations fail to state a claim for fraud.  *See Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004), as modified (Dec. 30, 2004) ("elements of a cause of action for fraud are: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4)

1 justifiable reliance; and (5) resulting damages.") (cleaned up). As discussed above, these policies
2 do not require Twitter to take any particular action, and as such, Plaintiff has not identified a
3 misrepresentation on which he reasonably relied.

### 3) Intentional Infliction of Emotional Distress (IIED) and Assault Claims

Plaintiff's IIED and assault claims are predicated on his "risk of contacting [sic] the virus they helped and facilitated for spread. The IIED already included the emotion of fear from their conduct, and assault is more about the risk of contacting [sic] the virus and the risks of physical health issues from it." (Dkt. No. 34 at 58.) The elements of an IIED claim are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (internal citation omitted). Plaintiff has not identified any conduct by Twitter which gives rise to his IIED claim beyond alleging Twitter did not suspend the third-party user's account. Conduct is outrageous if it is so extreme as to exceed all bounds of usually tolerated in a civilized community. *Id.* at 571. Twitter's alleged conduct does not plausibly satisfy this standard.

Likewise, Plaintiff's allegations regarding his risk of contracting HIV because the third-party account holder's account has not been suspended fail to state a claim for assault. *See Brooks v. United States*, 29 F.Supp.2d 613, 617 (N.D.Cal.1998) (stating the elements of assault are: "(1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact.") (citing Restatement (Second) of Torts § 21).

### 4) Defamation

Plaintiff alleges Twitter defamed him because his Twitter account states "Account suspended Twitter suspends accounts that violate the Twitter Rules. This page is accessible to anyone without logging in to twitter." (Dkt. No. 34 at 71.) Under California law, a plaintiff bringing a defamation claim must establish: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus*

10

*v. Loftus*, 40 Cal. 4th 683, 720 (2007) (quotation marks and citation omitted). Plaintiff's allegations fail to satisfy any of these elements—he has not alleged facts that plausibly support an inference Twitter published a false and defamatory statement about him.

### 5) Intrusion of Privacy

While Plaintiff references "intrusion of privacy" in his amended complaint, he does not explain the basis for this claim. (Dkt. No. 34 at 4, 57, 59, 70, 106.) "The common law cause of action for invasion of privacy based upon intrusion has two elements: (1) intentional intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Marich v. MGM/UA Telecommunications, Inc.*, 113 Cal. App. 4th 415, 421 (2003) (cleaned up). Plaintiff has not alleged any conduct by Twitter which satisfies either element. Plaintiff also has not responded to Twitter's motion to dismiss this claim for failure to state a claim. "Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." *Shull v. Ocwen Loan Serv., LLC*, 2014 WL 1404877, *2 (S.D. Cal. Apr. 10, 2014) (collecting cases); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (where opposition to motion to dismiss failed to address arguments in motion to dismiss, the plaintiff failed to demonstrate a continuing interest in pursuing a claim for relief and it was "effectively abandoned" and could not be raised on appeal).

### 6) Criminal Claims

To the extent Plaintiff alleges claims under 18 U.S.C. §§ 2252, 2252A, 2257 related to Twitter's alleged failure to investigate the third-party Twitter user for possible child sex exploitation, Plaintiff lacks standing to bring a civil claim under 18 U.S.C §§ 2252 and 2252A. *See* 18 U.S.C. § 2255 (authorizing a "person who, while a minor, was a victim of a violation of section… 2252, 2252A" "and who suffers personal injury as a result of such violation" to bring a civil claim). Further, there is no private right of action under Section 2257. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (refusing to "infer a private right of action from 'a bare criminal statute.'"); *Ventura Content, Ltd. v. Motherless, Inc.*, No. 2:11-CV-5912-SVW-FMO, 2013 WL 11237204, at *16, n.12 (C.D. Cal. July 3, 2013) ("Although Section 2257 is a federal statute, it does not create a private right of action."), aff'd,

11

1 885 F.3d 597 (9th Cir. 2018).

### 7) UCL

The nature of Plaintiff's UCL claim is unclear. To state a claim under the UCL, a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To succeed on a UCL claim under any of these theories, a plaintiff must establish the defendant engaged in one of the practices the statute prohibits and, as a result of the conduct, he or she suffered actual injury. *Marolda v. Symantec Corp*., 672 F.Supp.2d 992, 1003 (N.D. Cal. 2009).

Plaintiff's claim fails as a threshold matter because he has not adequately alleged standing. "While the substantive reach of [the UCL] remains expansive," to establish standing to enforce the UCL's provisions, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that *economic injury* was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct*., 51 Cal. 4th 310, 322 (2011) (emphasis in original); *see also* Cal. Bus. & Prof. Code § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction ... by a person who has suffered an injury in fact and has lost money or property as a result of the unfair competition.").

Even if this were not the case, Plaintiff has not adequately pled a UCL claim—it is unclear if the claim is brought under the unfair, fraudulent, or unlawful prongs. To the extent it is brought under the unlawful or fraudulent prongs, the claim necessary fails because the underlying claims of unlawful conduct and fraud all fail to state a claim. *See Riley v. Caliber Home Loans, Inc*., No. 21-55909, 2022 WL 2072655, at *2 (9th Cir. June 9, 2022) (citing *Krantz v. BT Visual Images*, *L.L.C*., 89 Cal. App. 4th 164, 178 (2001), as modified (May 22, 2001) (holding a UCL claim stands or falls "depending on the fate of the antecedent substantive causes of action")). Plaintiff also has not alleged any unfair conduct by Twitter sufficient to plead a claim under the unfair prong. *See Warren v. PNC Bank Nat'l Ass'n,* No. 22-CV-07875-WHO, 2023 WL 3182952, at *10 (N.D. Cal. Apr. 30, 2023) ("[t]he 'unfair' prong requires proving either: (1) the public policy which is a predicate to a consumer unfair competition action is tethered to specific constitutional,

statutory or regulatory provisions, or (2) that the challenged business practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.") (cleaned up).

\*\*\*

Accordingly, Plaintiff's claims fail to state a claim on which relief could be granted and are subject to dismissal even if Twitter were not immune from suit under Section 230 of the CDA. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## CONCLUSION

For the reasons stated above, Twitter's motion to dismiss Plaintiff's Amended Complaint is GRANTED. Because amendment would be futile, dismissal is with prejudice. *Leadsinger, Inc. v. BMG Music Pub*., 512 F.3d 522, 532 (9th Cir. 2008).

This Order disposes of Docket No. 40.

**IT IS SO ORDERED.**

Dated: August 23, 2023

JACQUELINE SCOTT CORLEY
United States District Judge

13